UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS DROOGER and JEFFREY
HUNSAKER, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

v.

CARLISLE TIRE & WHEEL CO.,

        Defendant.

_____/

Case No. 1:05-CV-73

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant Carlisle Tire and Wheel Company's Motion for Partial Summary Judgment.  Also before the Court is Plaintiffs Dennis Drooger and Jeffrey Hunsaker's Motion to Certify this lawsuit as a class action.  Each motion has been fully briefed and the Court discerns no reason to hear oral argument.  W.D. MICH. LCIvR 7.2(d).  For the reasons set forth below, the Court will deny Defendant's Motion for Partial Summary Judgment and deny Plaintiffs' Motion to Certify.

**I.    BACKGROUND**

Defendant designs and manufactures specialty wheels and tires from its headquarters and principal place of business in Aiken, South Carolina.  Defendant's tires are used in various recreational applications, including recreational vehicles and trailers.  Plaintiffs are Michigan residents who purchased recreational travel trailers equipped with Defendant's tires.

During a September 2004 vacation, Plaintiff Hunsaker was towing his recreational travel trailer in Northern Michigan when he noticed the trailer was shaking and rattling.  After pulling his

vehicle to the side of the road and inspecting the trailer, Plaintiff Hunsaker discovered that the tread on Defendant's tire had completely separated and come unraveled. Plaintiff Hunsaker replaced the tire and continued his vacation. During the course of his travels, Plaintiff Hunsaker observed two more of Defendant's tires fail in a similar fashion.

Plaintiff Drooger experienced a like tire failure during a vacation in October 2003. Plaintiff Drooger was towing his recreational travel trailer—outfitted with Defendant's tires—on a Michigan roadway when he heard a loud thud. Plaintiff Drooger pulled his vehicle to the side of the road and upon inspection of the trailer, Plaintiff Drooger learned that Defendant's tire had completely lost its tread, and the belts inside the tire had unraveled. Plaintiff Drooger replaced the tire at a tire shop and continued his vacation. Plaintiff Drooger did not keep the mangled tire.

Plaintiffs filed this action against Defendant on behalf of themselves and all others similarly situated. Based on the tire failures, Plaintiffs' Complaint charges Defendant with: (1) strict products liability, (2) negligence, (3) breach of express warranty, (4) breach of implied warranty, and (5) violations of the Michigan Consumer Protection Act.[1] As for relief, Plaintiffs seek an order recalling all of Defendant's defective tires, a damage award for each defective tire, and incidental and consequential damages.

## II.   CONTROLLING STANDARDS

Since subject matter jurisdiction in this case is premised upon diversity jurisdiction under 28 U.S.C. § 1332(a)(1), the Court must first determine which jurisdiction's law governs.

---

[1] Plaintiffs do not seek class certification of their consumer protection claims.

### A.     Choice of Law

"It is well-established that federal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Charash v. Oberlin College*, 14 F.3d 291, 296 (6th Cir. 1994)).  Thus, this Court's task is to apply Michigan's choice of law analysis in accordance with its highest court. *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276, 280 (6th Cir. 1991).  If the Michigan Supreme Court has not considered a particular question, the Court must determine choice of law rules based on decisions of the Michigan Court of Appeals, federal courts interpreting Michigan law, restatements of the law, and scholarly commentary. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (1995); *Grantham & Mann v. Am. Safety Prod.*, 831 F.2d 596, 608 (6th Cir. 1987).

In Michigan, courts undertake a bifurcated inquiry when considering choice of law. *Sutherland v. Kennington Truck Serv. Ltd.*, 562 N.W. 2d 466, 472 (Mich. 1997).  That is, courts are first instructed to determine whether any other jurisdiction besides Michigan has an interest in having its law applied.  *Id.* at 471.  If no other state has a competing interest, the presumption that Michigan law will apply has not been overcome and the *lex fori* governs.  *Id.*  However, where both Michigan and another jurisdiction have an interest in having its law applied, Michigan courts look to balance the interests of both states and determine if Michigan's interests prevail despite the foreign interests. *Id.* (citations omitted).

Defendant is a South Carolina resident and the Court currently knows of no other state potentially interested in this action.[2] When determining if South Carolina has an interest, the Court must initially ask whether the palmetto state, under its own choice of law rules, would apply its own law. *Id.* at 473; *Sheldon v. PHH Corp.*, 135 F.3d 848, 852 (2nd Cir. 1998); *Mitchell v. Allen Bradley Co.*, No. 228252, 2002 WL 571298, *3 (Mich. App. Apr. 16, 2002). Under traditional South Carolina choice of law principles, the substantive law governing tort actions is determined by the *lex loci delicti*, or the law of the state where the injury occurred. *Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 88 (4th Cir. 1989); *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F. Supp. 1027, 1033 (D. S.C. 1993); *Boone v. Boone*, 546 S.E.2d 191, 193 (S.C. 2001); *Dawkins v. State*, 412 S.E.2d 407, 408 (S.C. 1991); *Complete Auto Transit Inc. v. Bass*, 93 S.E.2d 912, 913 (S.C. 1956). Despite this heavy presumption, South Carolina might still apply its own law if the *lex loci delicti* offends its public policy. For this exception to apply, "it must appear that [the *lex loci*] is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of [South Carolina] citizens." *Rauton v. Pullman Co.*, 191 S.E.

---

[2] However, this is likely to change if this case is certified as a class action. One of Defendant's principal arguments against class certification is that certifying a nationwide class on state law claims would unavoidably implicate the laws of every state where potential class-plaintiffs reside (or more likely where they were injured), yielding an unworkable choice of law scenario. *See In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action."). Plaintiffs—responding to this argument—have urged the Court to apply South Carolina law (the situs of Defendant's principal place of business), relying chiefly upon the Supreme Court of Oklahoma's decision in *Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618 (Okla. 2003). In *Ysbrand*, the court applied the law of Defendant's principal place of business to avoid any nationwide choice of law problems when class claims were premised on state law. *Id.* at 626. This issue is discussed in greater detail below. *See infra* section III.B.

416, 422 (S.C. 1937).³  Since the tortious incidents in this case occurred in Michigan and nothing suggests Michigan law will prejudice the interests of South Carolinians, the Court determines that South Carolina has no interest in seeing its law applied.  *Sutherland*, 562 N.W. 2d at 471.

Accordingly, the presumption that Michigan law will apply has not been overcome and the Court's choice of law inquiry could end here.⁴  *Id.* at 473 (when "the *lex fori* presumption is not overcome . . . we need not evaluate Michigan's interests.").  However, even when moving to the second step under *Sutherland* and evaluating Michigan's interests against South Carolina's, the balance still tips decidedly in favor of the application of Michigan law.

Defendant's only interest in having its home state's law apply—as advocated by Plaintiff—is that Defendant is a South Carolina resident.  Mere corporate citizenship alone is not a weighty enough interest to tip the scales in Michigan's choice of law analysis.  *See Hall v. Gen. Motors Corp.*, 582 N.W.2d 866, 871 (Mich. App. 1998) (citing *Farrell v. Ford Motor Co.*, 501 N.W.2d 567 (Mich App. 1993)) (corporate residence and forum not a sufficient interest).  Furthermore, Plaintiffs reside in Michigan, the tortious incidents occurred on Michigan roadways, and Defendant sold the offending tires in Michigan.⁵  Clearly, Michigan has a greater interest in seeing its laws applied to

---

³ According to the Fourth Circuit Court of Appeals, South Carolina's public policy exception is a hollow, almost never used device.  *Thornton*, 886 F.2d at 88.

⁴ In fact, this is the exact result reached by the court in *Sutherland*.  In *Sutherland*, the court first looked to Ontario's choice of law principles to determine that province's interest.  When the court learned that Ontario's choice of law rules applied the *lex loci delicti*, the court found wanting any foreign interest since the tortious accident occurred in Michigan.  *Sutherland*, 562 N.W.2d at 473.

⁵ The Court believes that because Defendant has marketed and sold its products in Michigan, it has the requisite constitutional contacts required for jurisdictional purposes.  *Sutherland*, 562 N.W.2d at 473 & n.22.

its citizens in this instance. *See Hall*, 582 N.W.2d at 868; *Brandt v. Starwood Hotels & Resorts Worldwide Inc.*, No. 02-10285-BC, 2004 WL 2958661, *4 (E.D. Mich. Dec. 14, 2004) (Michigan maintains an interest in applying its law to its own citizens, especially when a corporate defendant operates within Michigan). Therefore, Michigan law will supply the substantive rules of decision in this case.[6]

### A. Standard for Summary Judgment

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleading but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient

---

[6] As for procedural matters, the Court is, of course, guided by the Federal Rules of Civil Procedure. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. "The 'mere possibility' of a factual dispute is not enough," *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)), neither is the submission of *de minimis* evidence. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

### B.  Standard for Class Certification

Class action certification is governed by Federal Rule of Civil Procedure 23. Although the decision to certify a class action is committed to the trial court's discretion, *Watkins v. Simmons & Clark Inc.*, 618 F.2d 398, 402 (6th Cir. 1980), that discretion must abide within the framework of Rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). As such, trial courts are instructed to conduct a "rigorous analysis" to decide whether the prerequisites of Rule 23 are met before certifying a class action. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). The parties are ordinarily allowed the opportunity to be heard as to the propriety of class certification; however, when the issues are plain, a hearing is unnecessary. *Id.* at 160 (observing that issues can be plain enough from the pleadings to determine class action status without a hearing); *In re Am. Med. Sys. Inc.*, 75 F.3d at 1079. Because the issues controlling Plaintiffs' Motion to Certify are factually plain and largely a legal question, the Court finds a hearing unnecessary.

Rule 23 places the burden of class certification with Plaintiffs. *In re Am. Med. Sys. Inc.*, 75 F.3d at 1079; *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976). Under Rule 23, Plaintiffs must satisfy the four prerequisites of Rule 23(a), commonly referred to in legal lexicon as: (1) numerosity, (2) commonality, (3) typicality, and (d) adequacy of representation. *See* FED. R. CIV.

P. 23(a). Once those conditions are satisfied, Plaintiffs must also demonstrate that their class claims fall within at least one of the subcategories of Rule 23(b). Plaintiffs rely solely on Rule 23(b)(3) and the Court will confine its inquiry there. Thus, the Court must find that "questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." It is with these principles in mind that the Court turns to the parties' motions.

## III. DISCUSSION

### A. Summary Judgment

Defendant has moved for partial summary judgment against Plaintiff Drooger and contends that because Plaintiff Drooger failed to retain the defective tire, his claims must fail. In other words, Defendant invites the Court to endorse a categorical rule: "no tire, no case."[7] Upon review, the Court is of the opinion that such a sweeping, generalized rule—especially at this stage of the litigation—would be imprudent and will decline Defendant's invitation to so hold.

No controlling jurisdiction has considered the "no tire, no case" rule Defendant advances; however, Michigan courts observe the following precepts when evaluating a products liability action.

> A plaintiff bringing a products liability action, under either a negligence or a warranty theory, must show that the defendant supplied a product that was defective and that the defect caused the injury. *Mulholland v. DEC Int'l Corp.*, 443 N.W.2d 340, 349 (1989); *Auto Club Ins. Ass'n v. Gen. Motors Corp.*, 552 N.W.2d 523, 527 (Mich. App. 1996)). The plaintiff may establish its case by circumstantial and direct evidence. *Id.* A plaintiff meets its burden when it demonstrates, by a reasonable

---

[7] Defendant attributes this rule to be the remarks of the Louisiana Court of Appeals in *Gladney v. Milam*, 911 So. 2d 366, 368 (La. App. 2nd Cir. 2005). This is not entirely accurate. The *Gladney* court was merely recounting the case's procedural history and in doing so, quoted the trial court's phraseology, "no tire, no case." Although the appellate court eventually found that the plaintiffs did not meet their evidentiary burden, the case cannot be fairly said to stand for a categorical rule that without the defective tire a plaintiff cannot state a claim.

> probability, that the defect is attributable to the manufacturer and that such hypothesis is more probable than any other hypothesis reflected by the evidence. *Id.* The plaintiff is not required to eliminate all possible causes of the accident. *Id.* It is enough that the plaintiff establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support. *Mulholland*, 443 N.W.2d at 349.

*MASB-SEG Prop./Cas. Pool v. Metalux*, 586 N.W.2d 549, 552 (Mich. App. 1998).  At least one Michigan court has found that a plaintiff may establish product liability in the absence of the offending product on the basis of expert testimony and other circumstantial evidence. *See Hamann v. Ridge Tool Co.*, 539 N.W.2d 753, 757 (Mich. App. 1995) (finding the plaintiff presented sufficient evidence to support a theory that the defendant negligently manufactured a cable hoist when the cable hoist was destroyed and the defendant's expert was denied opportunity to examine it); *see also* RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 3 & cmt. b, illus. 6 (1998).  Thus, a Michigan products liability plaintiff can show liability without the offending product by way of circumstantial evidence, and the absence of the offending product is not always fatal to such a claim.  In other words, the Court affirmatively rejects a "no tire, no case" rule in this case.

Furthermore, at this stage in the proceedings, a ruling of this nature is entirely premature. Discovery is not set to close for another seven months and Plaintiff Drooger is not even required to name an expert witness until June 30, 2006.  A "no tire, no case" rule would be clearly improper since it would deprive Plaintiff Drooger of any opportunity to make a *prima facie* showing that Defendant's tire was defective in design or manufacture by circumstantial evidence, including expert testimony. *See Metalux*, 586 N.W.2d at 552 (citations omitted).  Defendant's complaints of not being able to assess for itself what happened to the absent tire merely go to the weight of Plaintiff Drooger's evidence, rather than to a complete failure of proof when there may be sufficient

testimony to indicate a defect existed.[8] Defendant is free to assail Plaintiff Drooger's expert on this point during cross examination.

Moreover, Plaintiff Drooger and Defendant's expert witnesses will be on identical footing since neither expert will ever have the chance to physically inspect the offending tire. This is not a spoliation of evidence case where Plaintiff Drooger should be penalized for losing the tire. *Cf. Hamann*, 539 N.W.2d at 756-57 (unfair to let the plaintiff's expert testify about defective product based on his examination when he lost the product before the defendant's expert could examine it). In this case, Plaintiff Drooger had no reason to expect that the failed tire would become evidence or otherwise suspect he would need to keep the useless shards of rubber.

Although it may be determined in later proceedings that Plaintiff Drooger has failed to marshal enough evidence to make a *prima facie* showing that Defendant's tire was defective, to find unequivocally that no tire equals no case—particularly when Plaintiff Drooger has not even had the chance to try and make a *prima facie* showing—would be premature and improper. Therefore, the Court will deny Defendant's Motion for Partial Summary Judgment.

### B.   Class Certification

Plaintiffs wish to certify this case as a national class action and believe their kindred class plaintiffs are:

> All persons in the United States, including the estates, representatives, guardians and administrators of such persons, who have suffered economic injuries and/or property damage at any time between January 31, 1999 and the present as a result of defective

---

[8] For example, Plaintiff Drooger could offer the testimony of the tire shop attendant who replaced his tire. *Cf. Smith v. Uniroyal Inc.*, 420 F.2d 438, 442 (7th Cir. 1970). However, such testimony would now have to comply with *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993), if offered as expert testimony.

tires designed, manufactured, sold and/or distributed by Carlisle Tire & Wheel Company ("Carlisle"), excluding employees, officers and/or directors of Carlisle.

(Pls.' Br. in Supp. of Mot. to Certify at 12-13). However, as was hinted at above, a nationwide class of plaintiffs presenting state law claims will yield serious difficulties concerning choice of law and the ultimate manageability of the suit. *See supra* note 1. Since class certification requires Plaintiffs to satisfy both Federal Rule of Civil Procedure 23(a) and (b)(3) (as Plaintiffs elected), the Court finds it prudent in this case to work backwards from Rule 23(b)(3)'s requisite findings that common questions of law and fact predominate and that maintenance of a class action is superior to other relief.

The predominance test expressly directs district courts to make a comparison between the common and individual legal and factual questions involved in the case in order to determine if such common questions are present in a class action context. Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 4.23, at 4-79 (3d ed. 1992). Because Plaintiffs are seeking certification of a nationwide class grounded in violations of state law, it is incumbent upon the Court to discern whether variations in state law will defeat predominance. *See In re Am. Med. Sys. Inc.*, 75 F.3d at 1085; *In re Jackson Nat. Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 223 (W.D. Mich. 1998). In this regard, "Plaintiffs have the burden of establishing that variations do not 'swamp any common issues.'" *In re Jackson Nat. Life*, 183 F.R.D. at 223. Therefore, the first question the Court must answer is how Michigan's choice of law rules will be impacted by potential nationwide class plaintiffs.[9] *See In re Bridgestone/Firestone Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002).

---

[9] In this regard, the Court has not abandoned the four traditional factors under Rule 23(b)(3) and will revisit their implication later. However, "there is no requirement that a court review all four factors in every case or that the court make findings with respect to them . . . [since] the four criteria are not exhaustive . . . [and a] court may also consider other matters pertinent to predominance and

The analytical discussion of choice of law can best be articulated by way of example. As indicated, Plaintiffs' proposed class includes any person residing in the United States who has suffered economic injury from Defendant's tire after January 31, 1999. Suppose a hypothetical plaintiff purchases Defendant's tires in Ohio and affixes them to his recreational trailer. With his trailer in tow, the hypothetical plaintiff begins to drive toward Sandusky, Ohio, for a family vacation. En route, he notices that the tread on Defendant's tires on his recreational trailer have separated and completely unraveled, leaving him stranded on an Ohio highway. Sometime thereafter, the hypothetical plaintiff learns of and seeks to join this suit.

Under Michigan's choice of law rules, the Court would be obligated to look to Ohio's choice of law rules (to ascertain Ohio interests) and determine if it would apply its own law to our hypothetical plaintiff. *Sutherland*, 562 N.W.2d at 473. Ohio follows the Restatement of the Law of Conflicts when considering choice of law questions. *Morgan v. Biro Mfg. Co.,* 474 N.E.2d 286, 288-89 (Ohio 1984). Under the Restatement's section 146, the law of the place of the injury is presumed to control unless another jurisdiction has a more significant relationship to the lawsuit. *Id.* The state having the most significant relationship is determined by: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Restatement section 6. *Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971)). All of these factors strongly favor application of Ohio law. Ohio, therefore, has an interest in seeing its law applied.

---

superiority." 5-23 MOORE'S FEDERAL PRACTICE – CIVIL § 23.46[2]. Choice of law is just such a matter pertinent to predominance and superiority.

Returning to *Sutherland* and advancing to the second step in the analysis, the Court would be forced to apply Ohio law since this is an Ohio tort involving an Ohio plaintiff. *See Farrell*, 501 N.W.2d 572-73; *Hillburn v. Gen. Motors Corp.*, 958 F. Supp. 318, 321 (E.D. Mich. 1997). Michigan's minimal interest as the forum would clearly be trumped. The result would be even more profound when potential class plaintiffs' tires fail in states following the *lex loci delicti*. *See In re Bridgestone/Firestone Inc.*, 288 F.3d at 1016. In such a scenario, Michigan law would again have to be dispatched in favor of the *lex loci delicti*. Consequently, under the teachings of *Sutherland*, if this case were certified as a nationwide class action, the Court would have to try the case under the laws of the 50 states (or however many jurisdictions future class plaintiffs reside in).[10] While not necessarily the death knell to certification, a nationwide class under every state's law would only be permissible were there no conflicts of law.

Unfortunately for Plaintiffs, even the most rudimentary survey of products liability law amongst the states unearths a ready conflict. Indeed:

> There is no monolithic products liability law in the United States. In fact, there is probably no significant aspect of products liability which is precisely the same in all American jurisdictions. Someone seeking an example of the diversity of our nation and the continuing supremacy of the system of federalism as embodied in the Tenth Amendment to the United States Constitution need look no farther than products liability . . . .
>
> [T]his Balkanization creates enormous confusion when comparing the detailed aspects of the law of one state with that of another. Strict liability in California is different from strict liability in New York, strict liability in Kansas, and strict liability in Alabama. In Michigan, while no separate strict liability cause of action exists, one

---

[10] The scenario could potentially become even more complex given the nature of Defendant's tires and their recreational applications. Plaintiffs' tires failed while vacationing intrastate. The Court is loathe to imagine the choice of law problems attendant to potential class plaintiffs whose tires fail when traveling outside their home state given the choice of law complexities already present.

> commentator claims that Michigan's breach of implied warranty is really strict liability.  In Delaware, there is no strict liability at all . . . .
>
> In [New York], a products liability plaintiff may sue in negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranty, strict liability in tort, as well as intentional or negligent misrepresentation.  In [Connecticut, Kansas, Oregon, or Washington], that same plaintiff would have only a single cause of action under the state products liability act.  Somewhere else, such as Indiana, that identical plaintiff could sue in negligence or strict liability but not warranty, while a few miles away in Michigan, he or she could only sue in negligence or warranty.

*Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 369 (N.D. Ill. 1998) (quoting 1 Louis R. Frumer & Melvin I. Friedman, PRODUCTS LIABILITY § 2.01 (1997)).  Plaintiffs' breach of warranty claims suffer from the same defect.

> One might think that this concern would not apply with as much force to the plaintiffs' warranty claims since those claims arise under the Uniform Commercial Code, but courts and commentators alike have noted that the treatment of warranty claims from state to state is far from uniform. *See, e.g., Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016-17 (D.C. Cir. 1986) (Ruth Bader Ginsburg, J.) (expressing doubt that state warranty laws are uniform and finding that the plaintiffs had not carried their burden of establishing that they are); 1 Frumer & Friedman*, supra*, § 2.01 n.1 ("[A]lthough 49 states have adopted article 2 of the Uniform Commercial Code, from the standpoint of products liability, the warranty sections are often treated differently from state to state.").

*Fisher*, 181 F.R.D. at 369 n.3; *see also Szabo v. Bridgeport Machs. Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) (a nationwide class for breach of warranty claims injects serious choice of law problems).

For example, the meaning of the concept of negligence and subsidiary concepts such as duty of care, foreseeability, and proximate cause varies amongst the states.  *See In the Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995) (collecting cases and comparing model jury negligence instructions).  Furthermore, as Defendant catalogued in its appendices, many states vary the limitations period under which a cause of action for negligence or products liability

may be brought.[11]  The same can be said for the limitations periods governing breach of warranty claims.[12]  Plaintiffs concede that their claims cannot proceed as a class under the laws of the 50 states and "resolution of this case demands th[e] application of a single body of law . . . ." (Pls.' Reply in Supp. of Mot. to Certify at 8).  Instead, Plaintiffs argue that this case can be tried as a nationwide class action under South Carolina law alone.

For this contention, Plaintiffs pin their certification hopes chiefly upon the Oklahoma Supreme Court's decision in *Ysbrand v. DaimlerChrysler*. *See supra* note 1.  In *Ysbrand*, the court affirmed certification of a nationwide class action seeking recovery on a breach of warranty against automaker DaimlerChrysler.[13]  *Ysbrand*, 81 P.3d at 629.  The plaintiffs sought recovery on their belief that DaimlerChrysler's front passenger seat air bags were defective.  *Id.* at 621.  Recognizing the problem of certifying a nationwide class action brought pursuant to state law, the court avoided the choice of law problem by application of Oklahoma's choice of law principles.  Oklahoma's choice of law rules embody a "most significant relationship" test that is drawn from the Restatement of the Law of Conflicts and "determines which state's law is most directly connected to the parties and the transaction."  *Id.* at 625.  Applying this test, the court found that the relationship of states where vehicles were purchased (the class plaintiffs' home states) was less significant in comparison

---

[11] *See, e.g.*, KY. REV. STAT. § 413.140(1)(a) (one year); IND. CODE § 34-20-3-1(b)(1) (two years); MICH. COMP. LAWS § 600.5805(13) (three years); NEB. REV. STAT. § 25-224(1) (four years)

[12] *See, e.g.*, MASS. GEN. LAWS ch. 106 § 2-318 (three year limitations period for breach of implied or express warranty); DEL. CODE tit. 6 § 2-725 (four year limitations period for breach of implied or express warranty).

[13] The *Ysbrand*-plaintiffs also alleged common law fraud and misrepresentation claims against DaimlerChrysler.  Class certification was denied on these claims because the court found that Oklahoma choice of law rules required it look to each class member's home state for the substantive rules of decision, thus, yielding unmanageable class claims.  *Ysbrand*, 81 P.3d at 627.

to where the vehicles where designed, manufactured, and distributed (DaimlerChrysler's home state of Michigan). *Id.* at 625-26. Consequently, the court found Michigan law should apply since it "is the only state where conduct relevant to all class members occurred." *Id.* at 626. In line with *Ysbrand*, Plaintiffs seek application of South Carolina law because Defendant maintains its principal place of business there and would presumably serve as the only unifying characteristic among the proposed nationwide class of plaintiffs.

After due consideration, the Court finds that *Ysbrand* does not counsel the result Plaintiffs advance under Michigan law. First, the *Ysbrand* court relied on the Restatement of Conflicts, a test examined by the *Sutherland* court, but never endorsed. *Sutherland*, 562 N.W.2d at 468-69. As was explained above with our hypothetical Ohio class plaintiff, application of Michigan choice of law rules in conjunction with a restatement jurisdiction will generally yield a result that the law of the place of injury will control. The Court would be required under *Sutherland* to apply the law of every potential class plaintiff's home state because the incidents giving rise to a cause of action presumably occurred there and its his state of residence. Even advancing to the second step under *Sutherland*, the balance of interests (the Court will assume only for the moment that South Carolina has an interest) would favor application of the law of the potential class plaintiffs' home states. Mere corporate citizenship alone is not a weighty enough interest to tip the scales in Michigan's choice of law analysis. *See Hall*, 582 N.W.2d at 871; *Farrell*, 501 N.W.2d at 572-73; *see also Hillburn*, 958 F. Supp. at 321. Thus, *Ysbrand* yields the opposite result Plaintiffs suggest when applied to Michigan choice of law rules.

Second, under *Sutherland*, South Carolina has no interest in seeing its laws applied to this action. When evaluating South Carolina's interest, the Court looks to South Carolina's choice of

law rules and determines whether it would apply its own law. *Sutherland*, 562 N.W.2d at 473. As discussed above, South Carolina applies the *lex loci delicti* and will invariably look to the law of the place where the injury occurred. Accordingly, South Carolina has no interest in seeing its law applied to every potential class plaintiff's injury occurring outside of South Carolina. Therefore, the Court will be left to weigh the potential class plaintiffs home state's interest against Michigan's. Presumably, the only Michigan connection to this case will be as the litigation forum, and, in light of this minimal connection, the presumption that the *lex loci* will apply is duly overcome. *Cf. Sutherland*, 562 N.W.2d at 289-90; *Hall*, 582 N.W.2d at 871; *Farrell*, 501 N.W.2d at 572-73; *Hillburn*, 958 F. Supp. at 321. Accordingly, the Court finds if class certification were granted on Plaintiffs' tort and warranty claims, the Court would be forced to try those claims under the laws of the 50 states under Michigan's choice of law rules.

The great weight of authority observes that when class claims cannot be brought under a unifying law, predominating questions of law are absent, and certification is inappropriate. *See, e.g.*, *In re Bridgestone/Firestone Inc.*, 288 F.3d at 1016; *Stirman v. Exxon Corp.*, 280 F.3d 554, 566 (5th Cir. 2002); *In re LifeUSA Holding Inc.*, 242 F.3d 136, 147 & n.11 (3rd Cir. 2001); *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir. 1996); *In re Am. Med. Sys. Inc.*, 75 F.3d at 1089; *Walsh*, 807 F.2d at 1010-11. Therefore, the Court finds that Plaintiffs have not met their burden of demonstrating that common legal issues predominate over issues unique to their tort and warranty claims.[14]

---

[14] However, the Court is sympathetic to Plaintiffs plight. Their damages are small and their claims are unlikely to be pursued individually with any sort of nationwide zeal. Even so, the Court must remain obedient to Michigan precedent and believes the result reached today is consistent with Michigan jurisprudence.

Furthermore, the Court predicts there will likely be different factual permutations indigenous to each potential class plaintiff that militate against class certification. Causation may prove problematic because there is no common injury causing event.

> In products liability actions . . . individual issues may outnumber common issues. No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case. *N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir. 1982).

*In re Am. Med. Sys. Inc.*, 75 F.3d at 1084-85 (other citations omitted). Plaintiffs have focused the majority of their certification efforts—and rightly so—on overcoming the choice of law hurdle. Plaintiffs, however, have devoted little attention to assuring the Court that common questions of fact predominate a nationwide class suffering individual injuries. Thus, the Court finds that Plaintiffs have also not met their burden of demonstrating that common issues of fact predominate over individual fact issues.[15]

The difficulties in managing a nationwide class action under the laws of the 50 states with differing legal standards and expected varying factual accounts far outweigh any benefits that accrue by class wide relief. *See* FED. R. CIV. P. 23(b)(3)(D). Observing that Rule 23(b)(3)'s predominance and superiority are mandatory and elemental, the Court need not discuss the remainder of Rule 23 having found Plaintiffs failed to demonstrate predominance. Accordingly, the Court will deny Plaintiffs' Motion to Certify this case a class action.

---

[15] The Court's Opinion should not be read to mean that the possibility of certification of a Michigan class of plaintiffs is foreclosed, presuming Rule 23 is satisfied.

**IV.     CONCLUSION**

Therefore, the Court will deny Defendant Carlisle Tire and Wheel Company's Motion for Partial Summary Judgment.  The Court will also deny Plaintiffs Dennis Drooger and Jeffrey Hunsaker's Motion to Certify.  An Order consistent with this Opinion shall enter.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>April 18, 2006 |  /s/ Richard Alan Enslen     <br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |